Evans, J.
dissenting. I dissent from the opinion of a majority of the court, and will state concisely my reasons. As no deed has been executed in this case, or any written contract proved) we are not incumbered by the difficulty which was presented in the cases heretofore decided, of looking behind the deed for the parol representations which, before the case of Gray vs. Hankinson, 1 Bay, 278, it was supposed was a defence which could avail only in Equity, and which, so far as reported cases go-, was admitted in a law court for the first time in that case. I take it to be clearly settled by that case, and the case of the State vs. Gaillard, and the other cases which have been decided since, that where there is a false representation in relation to the thing sold, whereby the great object of the purchase has been defeated, the purchaser is entitled to be relieved. So that the first question is whether there was a false representation made by Gillespie, the seller, in this case.
I admit the rule to be that, if the purchaser knew of the objection, or that his attention was called to the matter so as to set him on inquiry, or if he had equal means of in *108 formation, and the representation was only matter of opinion, then the rule of caveat emptor applies.
The witnesses say that Gillespie represented that he was selling a mill seat, and that the purchaser’s object in buying was the mill seat. If a man buy land for a mill seat, and his object be the erection of a mill, does he get what he supposed he was buying, and what the seller represented he was selling, unless he gets also a mill pond, or a space to contain water, to propel his mill when erected? The idea of a pond is inseparably connected with a mill. It was an incident to, and inseparable from it; without it the purchase was valueless ; it was not what was sold by one party and purchased by the other. I think there can be no doubt that, in this particular, there was a misrepresentation, and on this ground alone the purchaser is not bound to pay the purchase money. He has not yet what, according to all the evidence, was the inducement to give $8000 for what Hin-son, who knew no mill could be erected on the place, was unwilling to give $500, and which none of the witnesses supposed was worth more than $1000. In Gray vs. Hankinson and the other cases, such a mistake was held sufficient to avoid the contract, although there was no intention to deceive on the part of the seller, and that principle is fully recognized in the case of Means vs. Brickell. Between the cases of Gray vs. Hankinson, the State vs. Gaillard, and this case, there is a remarkable resemblance in every particular. In the first case the mill seat was taken away by an older grant; in the second case,' there was a mill seat and pond, but the stream was a dry gully affording no water for a mill; and in this case, there was a place whereon to build a mill house, but not space enough for a mill pond. In all of these there was a representation of a mill seat, and the great object of the purchase was wholly defeated, because the representation about the mill seat turned out to be untrue. Unless these cases are to be overruled, I do not perceive how Dunn is to be compelled to perform his contract.
Independent of this ground, there was clear evidence of wilful concealment, by Gillespie, in relation to the mill pond; and, besides the evidence as reported, the jury have express *109 ly found that fact. The proposition submitted to the jury was this, “ if Gillespie knew that no mill dam could be made without backing the water upon the land of others, and concealed this fact from the defendant, it was such a fraud as discharged the purchaser from the performance.” The jury have found both the knowledge and concealment; and if.this does not establish fraud, I am at a loss to conceive what can. This sort of concealment, in relation to personal property, is the foundation of the action of deceit. The case of Johnson vs. Wideman, and many others in our own courts, sustain the position that, if the seller knowingly conceal an important fact, against which there is no warranty express or implied, the purchaser shall, nevertheless, be discharged from the contract, or recover damages to the extent of the injury. The case of Johnson vs. Wideman turned upon whether the seller did not knowingly conceal from the purchaser that the negro was of bad character. The principle is the same, whether it relate to land or ne-groes ; common honesty requires that everything which enters into consideration in estimating the value of the thing sold, should be disclosed, and the concealment is a fraud ; and if it .affects, as in this case, the main object of the purchase, the contract should be set aside altogether. There is no difficulty here in doing it in a law court. No deed has been executed ; the defendant has nó legal title, and can only demand one when he pays the money; until that is paid the land is Gillespie’s.
Our law, it is conceded, does not go as far as the civil law in relieving against contracts. By that law the utmost degree of fairness was required. But I presume it will be difficult to find a case where mistake and concealment has not been relieved against where they related to that which was the main object of the purchaser ; unless in those cases where the purchaser knew the fact, or had such information as should have led him to enquire farther into the matter, or did not rely on what was said by the seller, but on his own presumptuous opinion, and cases of that description, all of which are well stated by Chancellor Kent in his 39th lecture, and by Story in his work on Equity Jurisdiction. That Dunn and Gadberry were ignorant of *110 the fact that the water could not be raised without overflowing the land of others, is manifest from the price paid, and is a fair inference from the verdict. The jury have found that there was a wilful concealment, and there can be no concealment of what is already known. There is no evidence that the lines of the adjoining lands were shown so as to enable the purchaser to exercise his judgment whether the water, when raised by the dam, would flow back upon the land of others ; so far as the evidence goes, no intimation was given on this subject. Gillespie himself, when asked why he did not inform the purchasers, did not pretend he had done so, but admitted he had not, nor did he pretend that he had given such information as to enable them to judge correctly. To my mind it is so clear that Dunn has been overreached, cheated and defrauded, by the wilful and fraudulent concealment of what, in common honesty, the seller was bound to disclose, that to enforce this contract against him would be to give legal sanction to Gillespie’s notions of morality, and to enable him to enforce a contract made under the representation, on his part, and the expectation on the other, that a mill could be erected and enjoyed on the land, at a price eight times the highest value set on the land itself by any of the witnesses.
O’Neall, J. concurred with EvaNs, J.